**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| MARQUITA DAVIS, individually and on behalf of all similarly situated individuals,<br><br>Plaintiff,<br><br>ASPIRE LIFESTYLES (AMERICAS) INC.,<br><br>Defendant. | Case No.: 1:24-cv-02343-CMH-WEF |

**MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR SETTLEMENT APPROVAL**

Named Plaintiff Marquita Davis ("Named Plaintiff"), individually and on behalf of all others similarly situated (collectively "Plaintiff and the Collective Members") files this Memorandum of Law in Support of her Unopposed Motion for Settlement Approval, respectfully asking the Court to approve the Master Settlement Agreement Regarding Stipulated Collective Action ("Settlement Agreement") entered into between the Parties.[1] The Parties' Settlement Agreement is attached hereto as Exhibit 1. Named Plaintiff requests that the Court find that the Settlement Agreement provides for a fair and reasonable resolution of *bona fide* disputes between the Parties; certify a collective action under the FLSA, as defined herein and in the Settlement Agreement, for settlement purposes only; approve the method of calculating Settlement Shares to be offered to the Collective Members; approve the process for notifying the Collective Members of the settlement and inviting them to participate; approve the proposed Collective Counsel Payment to be made Collective Counsel out of the Gross Settlement Amount; approve the Collective Representative Service Award to Named Plaintiff ; and dismiss this matter with prejudice.

[1] All capitalized terms herein adopt the definitions set forth in the Settlement Agreement.

## BACKGROUND

### I. PROCEDURAL HISTORY.

Named Plaintiff filed this action in the Eastern District of Virginia on December 23, 2024. (ECF 1). Named Plaintiff brought claims under the FLSA and the common law on behalf of herself and all others similarly situated against Defendant Aspire Lifestyles (Americas) Inc. ("Defendant" and together with Named Plaintiff, the "Parties"). *Id.* Plaintiff's Complaint sought to conditionally certify a collective of employees defined as:

> *All current and former Lifestyle Consultant, Lifestyle Concierge, Customer Service Representative, and/or other job titles performing the same or similar job duties (collectively "Customer Service Representatives" or "CSRs"), who worked for Aspire Lifestyles (America) Inc., at any time in the last three years.*

*Id.* ¶ 46.

After a meet-and-confer, the Parties agreed to request a stay of the action and proceed to mediation. (ECF 10–11). This matter was stayed by the Court on January 17, 2025. (ECF 14). Defendant has not filed an answer to the Complaint or otherwise responded to the Complaint due to the stay. The Parties have not completed any formal written or oral discovery at this stage

During the stay, the Parties agreed to mediate a collective resolution and seek court approval of any settlement (including court approval of notice of the settlement to collective members). To facilitate the mediation, and during the stay, Defendant provided detailed pay data to Named Plaintiff so that the Parties could productively mediate. The information provided by Defendant included data for the relevant time period for every putative Collective Member. It identified each putative Collective Member by their employee ID, their start and end dates with the Defendant, and their last rate of pay. Defendant also provided aggregate data for the Collective Members for both a two-year and three-year time period. The aggregate data includes the total

number of workweeks with any hours worked, the total number of workweeks with over 38 hours worked, and the total number of workweeks with over 40 hours worked.

The Parties attended an in-person mediation with Michael Russell of Miles Mediation in Nashville, Tennessee on June 20, 2025. Following a full day of mediation, and with significant help from the mediator, the Parties reached the resolution presented here.

## II. NAMED PLAINTIFF'S CLAIMS AND DEFENDANT'S DEFENSES.

Named Plaintiff alleges she worked for Defendant as a "Lifestyle Consultant" from July 2022 to December 2023. Compl. ¶ 12. Named Plaintiff alleges her primary job duties for Defendant included answering phone calls and providing customer service to customers seeking to use loyalty programs, by booking travel, making dining reservations, or purchasing tickets to events (among other things). *Id.* ¶ 18. Plaintiff alleges she provided customer service to Defendant's clients using Defendant's computer, telephone, and programs accessible from Defendant's computer. *Id.* ¶ 22. To access Defendant's systems, Plaintiff alleges that she, and all Collective Members must turn on or wake up their computers, enter their credentials, and then log in to multiple computer programs, servers, and applications before logging in to Defendant's phone system to become call ready by their shift start time. *Id.* ¶ 23. Plaintiff alleges that this boot-up and call ready work regularly takes up to 15 minutes per shift, or more if technical issues arise, and is unpaid. *Id.* ¶¶ 25-26. Plaintiff alleges that such work is compensable time, and that Defendant knew such work was being performed without compensation. Plaintiff further alleges that she is entitled to liquidated damages under federal law. Plaintiff also alleges Defendant's violations were willful, entitling her to a three-year statute of limitations under the FLSA.

Defendant asserts that it complied with the FLSA and that Named Plaintiff and Collective Member were properly compensated for all time worked. Defendant asserts that it provided Named

Plaintiff and Collective Members with paid time to log in and become call ready and required Named Plaintiff and Collective Members to accurately report all time worked, and maintains that to the extent there was any unpaid boot-up and call ready work, the time was *de minimis*.

## III. THE SETTLEMENT.

The Parties have agreed to resolve the lawsuit and release all wage and hour claims against Defendant for $300,000.00. This amount includes the release of claims outlined in the Collective Notice, the Settlement Administration Expenses, a Service Award to Named Plaintiff, and Collective Counsel's Collective Counsel Payment.

For purposes of settlement only, the Parties have agreed to seek certification of the following Collective:

> All current and former hourly Lifestyle Consultants, Lifestyle Concierges, Customer Service Representatives, or similar job titles whose primary job duty was to handle inbound phone calls and complete research and service fulfillment for members requesting personal services,[2] and who worked for Defendant anywhere in the United States, at any time from December 23, 2021, through the date of Settlement Approval by the Court.

Ex. 1, ¶ I.D.

The Settlement Share to be offered to the Collective Members will be determined based on the total number of shifts worked by each Collective Member between December 23, 2021 and Settlement Approval. *Id.* ¶ III.C.i.1. The Settlement Administrator will determine each Collective Member's Settlement Share by first dividing the total number of shifts worked by an individual Collective Member between December 23, 2021 and Settlement Approval by the total number of

---

[2] These services include, among others, making dining reservations and arranging culinary experiences; providing creative gifting services; offering personal shopping and retail benefits; arranging fitness and lifestyle services (e.g. spa, wellness, personal trainers); arranging home services (pet sitting, lawn care, contractors); granting access to top restaurant and private chef experiences; curating dining guides; organizing travel packages; offering travel rewards and privileges; and providing access to sporting, entertainment, music, and fashion events.

shifts worked by all Collective Members during the same time period to find the multiplier for each individual Collective Member. *Id.* The Settlement Administrator will then multiply an individual Collective Member's multiplier by the amount of the Net Settlement Amount to determine each individual Collective Member's offered Settlement Share.

The Collective Notice will advise Collective Members of the settlement, the claims in the lawsuit, how Settlement Shares were calculated, the release of claims Participating Settlement Collective Members will agree to, and how to receive more information from the Settlement Administrator and/or Collective Counsel. *See* Ex. 1, Ex. B. The Opt-in Period will last at least 60 days but can be extended up to an additional 60 days at the discretion of Defendant, and another 30 days at the discretion of the Parties. *See* Ex. 1, ¶ I.W. The Notice will be sent via U.S. Mail, email, and text message (where such contact information is available). *Id.* ¶ I.EE. A reminder Notice will also be sent at the 30-day mark and the Settlement Administrator will re-mail returned Notices where it can locate an updated address. *Id.* Once a Collective Member returns the Opt-In Form, they will become a Participating Settlement Collective Member, and their Settlement Share will be issued to them at a time as set forth in the Settlement Agreement. Participating Settlement Collective Members will have 120 days to sign and cash, deposit, or otherwise accept their Settlement Share after it is issued by the Settlement Administrator. *Id.* ¶ III.E.vi.

In exchange for their Settlement Share, each Participating Settlement Collective Member will agree to the following release of claims:

> "Released Claims" means all, claims, rights, demands, liabilities and causes of action that are alleged, or reasonably could have been alleged based on the facts and claims asserted in the operative Complaint in the Lawsuit, including claims under the Fair Labor Standards Act ("FLSA"), applicable state statutes or local laws, or the common law theories of quantum meruit, unjust enrichment, conversion, breach of contract, theft of labor, and any other federal, state, or local law related to the payment of wages, including but not limited to overtime, minimum wage, off-the-clock work, miscalculation of regular rate or overtime pay,

> unpaid meal periods or rest breaks, wage statement violations, final pay upon termination, and interrupted meal periods or rest breaks (including associated penalties and derivative claims under any applicable state law), all claims for costs, attorneys' fees, penalties, interest, and/or any other benefits or claim against the Released Parties.

Ex. 1, ¶ I.Y.

In exchange for a Service Award, Named Plaintiff will agree to the following general release of all claims:

> In consideration of Defendant's payment to Plaintiff of the Collective Representative's Service Award as described in the Settlement Agreement in this Action, if approved by the Court, Plaintiff hereby fully waives, discharges, and releases Defendant and its parent, subsidiary and affiliated corporations, organizations and entities, and all of their respective past, present and future affiliates, partners, joint ventures, stockholders, predecessors, successors, assigns, insurers, officers, directors, employees, agents, representatives, attorneys, administrators, adjustors and independent contractors of all such released individuals, corporations, organizations and entities ("Released Parties") from any and all liabilities, obligations, claims, debts, demands, damages, costs, expenses, covenants, attorneys' fees, actions, and causes of action, of any kind or nature whatsoever, in contract, tort, law, equity, or otherwise, whether known or unknown, past or present, patent or latent, anticipated or unanticipated, accrued or unaccrued, which may have accrued or arisen at any time on or prior to the date this Release Agreement is signed by Plaintiff. Plaintiff acknowledges that matters now unknown to her may have given rise to claims which are presently unknown and that this release is being given in light of that acknowledgment. In addition to the claims Plaintiff releases in the Settlement Agreement, which includes all claims, rights, demands, liabilities and causes of action that are alleged, or reasonably could have been alleged based on the facts and claims asserted in the operative Complaint in the Lawsuit, including claims under the Fair Labor Standards Act ("FLSA"), applicable state statutes or local laws, or the common law theories of quantum meruit, unjust enrichment, conversion, breach of contract, theft of labor, and any other federal, state, or local law related to the payment of wages, including but not limited to overtime, minimum wage, off-the-clock work, miscalculation of regular rate or overtime pay, unpaid meal periods or rest breaks, wage statement violations, final pay upon termination, and interrupted meal periods or rest breaks (including associated penalties and derivative claims under any applicable state law), all claims for costs, attorneys' fees, penalties, interest, and/or any other benefits or claim against the Released Parties, Plaintiff further releases any and all claims, actions, demands, liabilities, and/or causes of action of whatever kind or character, joint or several, whether now known or unknown, asserted or unasserted, under any federal, state, or local statute, law, regulation, or ordinance and common law, including, but not limited to, Title VII of the Civil Rights Act of 1964, as amended

> by the Civil Rights Act of 1991; 42 U.S.C. § 1981; the Americans with Disabilities Act; the Family and Medical Leave Act of 1993; the Equal Pay Act ("EPA"); the Lilly Ledbetter Fair Pay Act of 2009; Families First Coronavirus Response Act of 2021; the Genetic Information Nondiscrimination Act of 2008 ("GINA"); the Employee Retirement Income Security Act of 1974 ("ERISA"); the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101, et seq. ("WARN"); or any other claim, regardless of the forum in which it might be brought, arising from or in any way connected with Plaintiff's employment with Defendant and the separation thereof, which Plaintiff has, might have, or might claim to have against the Released Parties, or any of them individually, for any and all injuries, harm, damages, penalties, costs, losses, expenses, attorneys' fees, and/or liability or other detriment, if any, whenever incurred, suffered, or claimed by Plaintiff in the Litigation/Arbitration or otherwise as a result of any and all acts, omissions, or events by the Released Parties, collectively or individually, through the date of this Release Agreement (collectively, the "Released Claims"). To the extent not previously released by the Settlement Agreement, Plaintiff further understands that this release includes all claims, if any, relating to or arising out of the same transaction, series of connected transactions, occurrences, or nucleus of operative facts that formed the basis of the claims that were or could have been asserted in the Action, and any claims challenged the practices that gave rise to the claims asserted in the Action. Plaintiff further understands that, to the extent not previously released by the Settlement Agreement, this release includes, but is not limited to, all claims that relate in any way to her employment with the Released Parties, including all claims for monetary damages, compensatory damages, punitive damages, front pay, back pay, liquidated damages, penalties, and all forms of injunctive, declaratory, or equitable relief, and costs and attorneys' fees, whether arising under federal, state, or local statutes, common law, or regulations.

Ex. 1, Ex. C.

The Settlement Agreement further provides for up to $25,000.00 in Settlement Administration Expenses. Ex. 1, ¶ III.D. It also provides for a service award of $5,000.00 to Named Plaintiff. *Id.* ¶ III.B.i. Lastly, the Settlement Agreement provides for a Collective Counsel Payment to Collective Counsel, consisting of reasonable attorneys' fees of one third of the Gross Settlement Amount, plus their costs, for a total of $107,660.04. *Id.* ¶ III.B.ii.

## ARGUMENT

### I. THE COURT SHOULD CERTIFY AN FLSA SETTLEMENT COLLECTIVE.

Pursuant to 29 U.S.C. § 216(b), employees may prosecute FLSA claims collectively: "An action . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." The United States Supreme Court has noted:

> A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity. These benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.

*Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

The FLSA gives this Court broad discretion to certify a collective under § 216(b) and facilitate notice to the collective members. *Id.* at 169-70.For the sole purpose of facilitating the settlement, Named Plaintiff respectfully requests, and Defendant does not oppose, certification of the following Collective:

> *All current and former hourly Lifestyle Consultants, Lifestyle Concierges, Customer Service Representatives, or similar job titles whose primary job duty was to handle inbound phone calls and complete research for members requesting personal services,*[3] *who worked for Defendant anywhere in the United States, at any time from December 23, 2021, through the date of Settlement Approval by the Court.*

---

[3] These services include, among others, making dining reservations and arranging culinary experiences; providing creative gifting services; offering personal shopping and retail benefits; arranging fitness and lifestyle services (e.g. spa, wellness, personal trainers); arranging home services (pet sitting, lawn care, contractors); granting access to top restaurant and private chef experiences; curating dining guides; organizing travel packages; offering travel rewards and privileges; and providing access to sporting, entertainment, music, and fashion events.

## II. THE COURT SHOULD APPROVE THE FLSA SETTLEMENT.

As the Eleventh Circuit Court of Appeals explained in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982), in the "context of suits brought directly against their employer under Section 216(b) to recover back wages for FLSA violations," the parties must present any proposed settlement to the district court, which "may enter a stipulated judgment after scrutinizing the settlement for fairness." The Fourth Circuit has stated that "rights guaranteed by the FLSA cannot be waived by private agreement between employer and employee" and claims for FLSA violations can be settled when "supervised by the DOL or a court." *Taylor v. Progress Energy, Inc.*, 415 F.3d 364, 374 (4th Cir. 2005). District courts in Virginia generally follow the principle set forth in *Lynn's Food Stores*. *See Minsterman v. S.L. Nusbaum Realty Co.*, No. 2:10cv303, 2011 WL 9687817, at *1 (E.D. Va. Jan. 21, 2011) (stating courts must determine whether an FLSA settlement "is a fair and reasonable resolution of a bona fide dispute").

When considering a settlement, courts must keep in mind that:

> [a] compromise is the essence of a settlement and the trial court should not make a proponent of a proposed settlement justify each term of a settlement agreement against a hypothetical or speculative measure of what concessions might have been gained since inherent in compromise is a yielding of absolutes and abandoning of highest hopes.

*Baust v. City of Virginia Beach*, 574 F. Supp. 3d 358, 363 (E.D. Va. 2021). There is an overriding public interest in favor of settlement and therefore, a strong presumption in favor of finding a settlement fair. *See id.*

### *A. The Settlement Resolves a Bona Fide Dispute.*

In the context of unpaid-overtime claims brought under the FLSA, a bona fide dispute exists when an employee makes a claim that he or she is entitled to overtime payment. *Baust*, 574 F. Supp. 3d at 365 (quotation omitted). Put another way, a bona fide dispute exists when there are

legitimate questions about the existence and extent of the defendant's FLSA liability. *See Nazareth v. Shree Jay Jalaram, LLC*, No. 5:24-cv-70390, 2025 WL 1332968, at *2 (W.D. Va. May 7, 2025) (stating that courts must first determine "whether there are FLSA issues that are actually in dispute"); *Panico v. Turnbull Law Group, LLC*, No. CV-21-02060-PHX-MTM, 2022 WL 220485, at *1 (D. Ariz. Jan. 25, 2022) (finding a bona fide dispute where the parties reached a settlement before the defendant responded to the complaint); *Soto v. Wings 'R Us Romeoville, Inc.*, No. 15 C 10127, 2018 WL 1875296, at *2 (N.D. Ill. Apr. 16, 2018) (finding bona fide dispute where defendant denied the material allegations of plaintiffs' claims and any violation of the FLSA).

A proposed settlement resolves a bona fide dispute where the settlement's terms "reflect a reasonable compromise over issues, such as . . . back wages, that are actually in dispute" and not a "mere waiver of statutory rights brought about by an employer's overreaching." *See Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 530 (E.D. Pa. 2016) (citing *Lynn's Food Stores* at 1355). Here, as discussed above, Defendant disputes the merits of Plaintiff's allegations, whether a collective action should be conditionally certified, whether liquidated damages should be available, and disputes whether Defendant's conduct was willful, permitting a three-year statute of limitations. Plaintiff disputes Defendant's factual assertions, and any defenses that the work at issue is not compensable under the FLSA or is otherwise *de minimis*. Thus, a bona fide dispute exists.

***B. The Settlement is Fair and Reasonable.***

Factors a court weighs when considering whether an FLSA settlement is fair and reasonable include: 1) the extent of discovery that has taken place; 2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; 3) the absence of fraud or collusion in the settlement; 4) the experience of counsel who have represented the plaintiff; 5) the probability of plaintiff's success on the merits; and 6) the amount of settlement in relation to the

potential recovery. *Carr v. Rest Inn, Inc.*, No. 2:14–cv–609, 2015 WL 5177600, at *2 (E.D. Va. Sept. 3, 2015). When considering these factors, courts should apply "a strong presumption in favor of finding a settlement fair." *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08cv1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009) (internal quotations omitted). Furthermore, "[w]hile the opinion and recommendation of experienced counsel is not to be blindly followed by the trial court, such opinion should be given weight in evaluating the proposed settlement." *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975).

*1. The extent of discovery that has taken place.*

Prior to mediation, the Parties exchanged information sufficient to allow them to understand the case and the range of potential damages and to assess the potential varying outcomes of the case. This informal discovery disclosed the collective size, workweeks at issue, and potential damages. . It identified each putative collective member by their employee ID, their start and end dates with the company, and their last rate of pay. Defendant also provided aggregate data for the Settlement Collective for both a two-year and three-year time period. The aggregate data includes the total number of workweeks with hours worked, the number of workweeks with hours worked over 38 per week, and the number of workweeks with hours worked over 40 per week. Defendant also produced its relevant policy regarding when Plaintiff and the putative Settlement Collective are permitted to clock-in and start working. The Parties also discussed the facts and merits of the case while preparing for mediation and while negotiating the settlement. In summary, although no formal discovery has taken place, the Parties are well-apprised of the information necessary to assess whether the settlement reached is reasonable and fair.

Courts routinely hold that the informal discovery completed by the Parties is sufficient to reach a reasonable resolution and supports the settlement. *See Rosales v. Rock Spring Contracting*

*LLC*, No. 3:23CV407, 2024 WL 1417955, at *6 (E.D. Va. Apr. 2, 2024) (finding first factor met where parties engaged in "extensive informal discovery"); *Gholston v. Smithfield Foods, Inc.*, No. 2:21-cv-194, 2022 WL 21842305, at *4 (E.D. Va. Nov. 2, 2022) (finding first factor met where parties exchanged time and pay information); *Hatzey v. Divurgent, LLC*, No.: 2:18-cv-191, 2018 WL 5624300, at *2 (E.D. Va. Oct. 9, 2018) (finding first factor met at the beginning stages of litigation where discovery included "production of payroll and timekeeping data for Plaintiff and all putative Members"); *Brockman v. Keystone Newport News, LLC*, No. 4:15-CV-74, 2018 WL 4956514, at *3 (E.D. Va. Oct. 12, 2018) (finding that where parties agreed to "hold discovery in abeyance due to their settlement negotiations" it supported the first factor when "it would conserve resources of the parties and of this Court"); *see Crevatas v. Smith Mgmt. & Consulting, LLC*, No. 3:15-2307, 2017 WL 1078174, at *4 (M.D. Pa. Mar. 22, 2017) (finding extent of discovery weighed in favor of approval where defendant provided payroll data for each plaintiff which allowed creation of detailed damages model). This factor weighs in favor of approval

2. *The stage of the proceedings, including the complexity, expense and likely duration of the litigation.*

Absent settlement approval, the Parties have significant litigation ahead. The key consideration for this factor is whether the process has allowed the parties and their counsel to obtain and review evidence, to evaluate their claims and defenses, and to engage in informed arms-length settlement negotiations with the understanding that it would be a difficult and costly undertaking to proceed to the trial. *See Nazareth*, 2025 WL 1332968, at *3 (quotations omitted). Here, Named Plaintiff would need to move for conditional certification under the FLSA to send notice to allegedly similarly situated employees. Defendant will likely oppose such a motion, and the Parties may need to conduct discovery related to the motion.

After having the Collective conditionally certified, then the Parties would have needed to engage in extensive discovery regarding the merits of the FLSA claims, which would have required significant litigation on myriad issues, including but not limited to whether Defendant's records actually show that Named Plaintiff or the Collective Members actually engaged in off-the-clock work, whether they incurred overtime as a result, whether Named Plaintiff or the Collective Members complied with Defendant's policies on reporting all time worked, whether Defendant has a uniform and unlawful policy or practice resulting in off-the-clock work, whether the *de minimis* defense applies, the compensability of boot-up time, and the proprietary of liquidated damages and a three-year statute of limitations. *See Hargrove v. Ryla Teleservices, Inc.*, No. 2:11cv344, 2013 WL 1897027, at *3 (E.D. Va. Apr. 12, 2013) (finding second factor met in off-the-clock call center lawsuit where dispositive motions addressing knowledge of off-the-clock work, willfulness, and defendant's *de minimis* defense would be filed). This litigation would have been complicated, expensive, and protracted. Moreover, either side likely would have appealed any key judgment. The settlement provides significant monetary relief to Named Plaintiff and any Participating Settlement Collective Members now, rather than risking an uncertain and unpromised resolution of contested issues. Settlement further provides Defendant with peace of mind and certainty as to exposure resulting from the asserted allegations. Thus, this factor supports approval of the settlement.

*3. The absence of fraud or collusion in the settlement.*

"There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *Lomascolo*, 2009 WL 3094955, at *12; *see also Baust*, 574 F. Supp. 3d at 366 (stating there is a presumption that no fraud or collusion occurred in the absence of any evidence to the contrary). This settlement is the result of arm's length negotiations between

experienced counsel. There is no evidence of fraud or collusion. Counsel for the Parties vigorously negotiated the terms of the settlement, including attending an in-person, all-day mediation session with Michael Russell, a well-regarded FLSA mediator. Named Plaintiff was active and involved throughout the settlement negotiations, approved the final amount of the settlement, and signed the Settlement Agreement. Thus, this factor also weighs in favor of approving the settlement. *See Kapolka v. Anchor Drilling Fluids USA, LLC*, 2:18-cv-01007-NR, 2019 WL 5394751, at *6 (W.D. Pa. Oct. 22, 2019) (approving FLSA settlement after finding that the parties "reached their proposed agreement through arm's length negotiations between competent counsel; counsel is experienced in this practice area of the law and intimately familiar with the case"; and the parties reached agreement "through mediation with a prominent and experienced neutral").

*4. The experience of counsel who have represented the plaintiff.*

Named Plaintiff and the Collective Members are represented by experienced litigators who have zealously advocated for their clients' interests during the course of this case. Johnson Becker is a national plaintiffs' law firm that represents individuals in complex litigation. Rusch Decl. ¶ 4. The lawyers at Johnson Becker have significant litigation and trial experience and have served in numerous leadership committees in some of the largest products liability and class action cases in the country, including multi-district litigation and state court consolidation court appointments. *Id.* Johnson Becker regularly counsels FLSA collective actions as well, having filed a significant number of unpaid overtime collective action lawsuits across the country over the past decade and recovering millions of dollars on behalf of their clients. *Id.* Johnson Becker regularly litigates and settles call center cases where employees claim unpaid wages for boot-up and call ready work. *Id.* ¶ 5. Johnson Becker has litigated such cases through conditional certification, discovery, class

certification, and summary judgment. *Id.* This factor therefore weighs in favor of settlement approval.

*5. The probability of plaintiff's success on the merits.*

Plaintiff's position is that the boot-up and call ready work at issue is compensable under the FLSA. *See Peterson v. Nelnet Diversified Solutions, LLC*, 15 F.4th 1033, 1041 (10th Cir. 2021) (holding "preshift activities of booting up a computer and launching software are integral and indispensable to the CCRs' principal duties of servicing student loans by communicating with borrowers over the phone and by email"). Defendant disputes this and further asserts that the work performed is *de minimis*, that it acted in good faith and therefore liquidated damages should not be awarded, and that its actions were not willful limiting Plaintiff to a two-year statute of limitations. *See Rosales*, 2024 WL 1417955, at *7 (finding factor met where disputes over hours worked, availability of liquidated damages, and whether action could proceed on a collective action basis were in dispute). When there are facts or circumstances indicating that a plaintiff has "significant hurdles to overcome to affect any recovery under the FLSA," this factor "weighs heavily in favor of finding the settlement fair." *Patel v. Barot*, 15 F. Supp. 3d 648, 656 (E.D. Va. Apr. 23, 2014). While Plaintiff believes her legal case to be strong, Defendant asserts numerous defenses, including that it maintained a written policy that permitted Named Plaintiff and the Collective Members to clock-in early to complete boot-up and call ready work that Named Plaintiff alleges she and the Collective Members were not paid for. As noted above, there are numerous other hurdles that Named Plaintiff will need to overcome to ultimately succeed on the merits of her claims and success is not guaranteed. This factor therefore weighs in favor of settlement approval.

*6. The amount of settlement in relation to the potential recovery.*

The amount of settlement in relation to the potential maximum recovery is more than reasonable and fair. Named Plaintiff alleged up to 15 minutes of allegedly unpaid overtime per shift for a three year lookback period, with 100 percent liquidated damages. Defendant maintains that there was little to no unpaid overtime work, that any overtime work that did occur is *de minimis*, that a three year lookback period is not appropriate because there is no evidence that any alleged failure to pay overtime was willful (particularly in light of its policy and lack of prior wage law violations), and that liquidated damages are similarly unjustified. Moreover, the data provided by Defendant in advance of the mediation showed that less than 60 percent of workweeks during the lookback period might have potential unpaid overtime, even if Named Plaintiff could prove unpaid boot-up time during those workweeks, thus dramatically limiting maximum potential damages.

The Gross Settlement Amount equates to what Plaintiff and the Collective believe to be the equivalent of (a) 7.5 minutes per work day of alleged unpaid overtime for a two-year lookback period, without liquidated damages; (b) 4.5 minutes per work day of alleged unpaid overtime for a three-year lookback period, without liquidated damages; or (c) 2.25 minutes per work day for a three year lookback period with 100 percent liquidated damages. Although the settlement amount is less than the maximum amount of time alleged in the Complaint, it is nevertheless between approximately 15 and 25 percent of the maximum potential recovery, depending on what lookback period is employed and whether liquidated damages are awarded, which is well within the range approved by courts. *See, e.g., Baust*, 574 F. Supp. 3d at 366 (approving settlement where plaintiffs recovered 25% of maximum recovery); *Soto*, 2018 WL 1875296, at *1 (approving settlement where plaintiffs recovered 25% of alleged damages); *Bellinghausen v. Tractor Supply Co.*, 306

F.R.D. 245, 256 (N.D. Ca1. 2015) (finding settlement fair where the settlement represented between 11% and 27% of the total potential recovery); *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 57–58 (E.D.N.Y. 2010) (settlement within range of reasonableness when it represented approximately 13% to 17% of the maximum possible recovery). This is especially true where Named Plaintiff's and the Collective's recovery is potentially zero if Defendant defeats a motion for conditional certification or prevails on a decertification or summary judgment motion. This factor therefore weighs in favor of settlement approval.

## III. THE COURT SHOULD APPROVE THE SETTLEMENT NOTICE.

The Parties seek approval of their proposed Notice of Collective Action Settlement ("Collective Notice") attached as Exhibit B to the Settlement Agreement. The Supreme Court recognized that collective actions benefit the goal of judicial economy by enabling "efficient resolution in one proceeding of common issues of law and fact." *Hoffmann-La Roche*, 493 U.S. at 170. However, these benefits are dependent on employees receiving notice "concerning the pendency of the collective action." *Id.* The notice must be "timely, accurate, and informative." *Id.* at 172. The Court has the discretionary authority to approve *Hoffmann-La Roche* notice to ensure its judicial neutrality. *Id.* at 174.

The Parties' proposed Collective Notice is accurate and informative. The Collective Notice meets the neutrality considerations because it contains a description of the lawsuit and settlement, eligibility requirements, the effect of joining or not joining the lawsuit and settlement, attorney contact information, information on how to join the lawsuit and settlement, and an express statement of court neutrality. Likewise, the Collective Notice includes statements that the Participating Settlement Collective Members understand the nature of the lawsuit and settlement,

and that they agree to be bound by its result. Accordingly, the Court should approve the Collective Notice and authorize its dissemination.

## IV. THE SETTLEMENT ADMINISTRATION COSTS SHOULD BE APPROVED.

The Parties' Settlement Agreement provides for the payment of no more than $25,000.00 to a third-party settlement administrator to send notice of the settlement, receive and process opt-in forms, and to disburse the settlement payments. The cost of settlement administration is to be deducted from the Gross Settlement Amount. This cost is reasonable and necessary. *See Henderson v. Verifications Inc.*, No. 3:11cv514-REP, 2013 WL 12146748, at *4 (E.D. Va. Mar. 13, 2013) (approving settlement administration costs to be deducted from settlement fund); *Taylor v. Timepayment Corp.*, No. 3:18-cv-00378-MHL, 2020 WL 906319, at *2 (E.D. Va. Feb. 24, 2020) (approving deduction of settlement administration costs from settlement fund). The Court should therefore approve Settlement Administration Expenses of no greater than $25,000.00 to be deducted from the settlement fund.

## V. THE SERVICE AWARD SHOULD BE APPROVED.

Named Plaintiff requests a service award in the amount of $5,000 for bringing this action and achieving the settlement. "Incentive awards are 'intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general.'" *Berry v. Schulman*, 807 F.3d 600, 613 (4th Cir. 2015) (affirming approval of $5,000 service awards). Service awards are "fairly typical in class action cases." *Id.*

A service award of $5,000 is reasonable for similar collective and class action litigation. *See Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 578 (E.D. Va. 2016) (listing cases approving $5,000 service awards or greater); *Henderson*, 2013 WL 12146748, at *4 (approving service award

of $5,000 in class action litigation); *Carroll v. Northampton Rest., Inc.*, No. 2:21-cv-115, 2024 WL 1223442, at *5 (E.D. Va. Mar. 21, 2024) (approving $9,000 service award in FLSA collective action). The proposed service award represents a fraction of the Settlement Fund (1.66%) and is reasonable in light of the work performed and the amount of the recovery.

The role of Ms. Davis as the Named Plaintiff in this litigation was crucial as she initiated the lawsuit, reviewed and approved the Complaint, conferred with Plaintiff's Counsel regarding the merits of the case and other threshold issues in the matter, and continuously communicated with Plaintiff's Counsel throughout the tenure of this litigation, including settlement discussions and at mediation. Accordingly, this Court should approve the proposed service award to Named Plaintiff.

## VI. THE ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED.

### *A. An Award of Attorneys' Fees is Mandatory in FLSA Cases.*

The FLSA's fee-shifting provision requires employers, including those that settle cases, to pay the employee's reasonable attorneys' fees and costs in having to bring a lawsuit to recover her unpaid wages. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action.") (emphasis added). Under the FLSA, "Congress intended that the wronged employee should receive his full wages plus the penalty without incurring any expense for legal fees or costs." *Maddrix v. Dize*, 153 F.2d 274, 275–76 (4th Cir. 1946). Indeed, "allowing an award of attorney's fees under FLSA cases . . . encourage[s] employees to vindicate what Congress considers an important right to receive wages designed to ensure a minimum standard of living." *Fisher v. Stolaruk Corp.*, 648 F. Supp. 486, 487 (E.D. Mich. 1986) (further explaining that "the plaintiff acts as a private attorney general").

In FLSA cases, a favorable "judgment" includes "a judgment in [a plaintiff's] favor, a court-approved settlement, or some other favorable resolution with a 'judicial imprimatur.'" *Jimenez v. Illini Precast LLC*, No. 19-CV-1623-JPS, 2023 WL 1777528, at *2 (E.D. Wis. Feb. 6, 2023). A "[s]ettlement does not preclude an award of fees." *Fisher*, 648 F. Supp. at 486. The employer's payment of the employee's attorneys' fees is still mandated in settled cases. *See*, *e.g.*, *Diaz v. Robert Ruiz, Inc.*, 808 F.2d 427, 428 (5th Cir. 1987) (plaintiff entitled to attorneys' fees for FLSA claims, where parties settled on eve of trial regarding merits of case, but not attorneys' fees); *Yue Zhou v. Wang's Restaurant*, No. C 05-0279 PVT, 2007 WL 2298046, at *1 (N.D. Cal. Aug. 8, 2007) ("Settlement of FLSA overtime claims cannot preclude an award of attorneys' fees by the court . . . under the FLSA an award of reasonable fees is mandatory.") (citing 29 U.S.C. § 216(b)); *Jaquez v. Maeweathers Transp., Inc.*, No. 6:06-cv-1859, 2007 WL 1200993, at *3 (M.D. Fla. April 23, 2007) ("[g]iven the mandatory award of reasonable attorneys' fees pursuant to 29 U.S.C. § 216(b), early resolution of FLSA claims through settlement are encouraged" to keep the amount of attorneys' fees reasonable — not to extinguish them). Therefore, Collective Counsel is entitled to an award of reasonable attorneys' fees.

### *B. The Court Should Apply the Percentage-of-the-Fund Method.*

There are two main methods for calculating the reasonableness of attorneys' fees—the lodestar method and the percentage-of-recovery method. *McAdams v. Robinson*, 26 F.4th 149, 162 (4th Cir. 2022). The lodestar method calculates reasonable fees by multiplying the number of reasonable hours expended times a reasonable rate. *Id.* (quotation omitted). There is a strong presumption that the lodestar figure is reasonable. *Id.* (quotation omitted). The percentage-of-recovery method considers the portion of the total settlement fund that will go to attorneys' fees.

*Id.* A district court may choose the method it deems appropriate based on its judgment and the facts of the case. *Id.*

The current trend among the courts of appeal favors the use of a percentage method to calculate an award of attorneys' fees in common fund cases. *Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 502–03 (E.D. Va. 1995) (citing cases) (awarding 25% of common fund with a 1.48 multiplier). "Within this Circuit, the percentage-of-recovery approach is not only permitted, but is the preferred approach to determine attorney's fees." *Savani v. URS Prof'l Sol. LLC*, 121 F. Supp. 3d 564, 568 (D.S.C. 2015) (citing *Goldenberg v. Marriott PLP Corp.*, 33 F. Supp. 2d 434, 438 (D. Md. 1998)). Plaintiff's Counsel therefore requests that the percentage-of-the-fund method be used.

District courts in the Fourth Circuit have considered the following factors in awarding fees using the percentage-of-the-fund method:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Rosales*, 2024 WL 1417955, at *9 (citing *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 760 (S.D.W. Va. 2009)); *see In re Cendant Corp., PRIDES Litig.*, 243 F.3d 722, 733 (3d. Cir. 2001). Importantly, there is no specific formula for analyzing these factors. *Rosales* at *9. Each case is different, and in certain cases, one factor may outweigh the rest. *Id.* Application of the factors here supports the requested amount:

*1. The results obtained for the collective.*

The Gross Settlement Amount equates to what Named Plaintiff and Collective Counsel believe to be between approximately 15 and 25 percent of the maximum potential recover in this

matter (*see supra* II.B.6). Named Plaintiff believes this recovery to be significant in light of the hurdles that would have been faced to achieve the maximum potential recovery. For instance, Defendant produced a timekeeping policy that permits call center workers like Plaintiff to clock-in up to 15 minutes early in order to boot up their computers and become call ready. Defendant also produced evidence that Plaintiff utilized this policy by routinely clocking-in early. Defendant asserts that the timekeeping and log-in data for the rest of the Collective Members will likely show similar practices by the Collective Members. These alleged facts undercut Named Plaintiff's allegations because, if true and proven at trial, then Named Plaintiff and the Collective Members may recover, at most, time spent turning on/waking up her computer, logging into the computer, and then pulling up and logging into the timekeeping program. To Plaintiff, this is still compensable time, but she does not allege that these actions alone took up to 15 minutes. *See* ECF 1 ¶ 23. In light of these contested facts, recovering for approximately 4.5 minutes of overtime work per shift represents a significant recovery.

*2. The quality, skill, and efficiency of the attorneys involved.*

Plaintiff and the Settlement Collective are represented by experienced litigators who have zealously advocated for their clients' interests during the course of this case. Johnson Becker is a national plaintiffs' law firm that represents individuals in complex litigation. Rusch Decl. ¶ 4. The lawyers at Johnson Becker have significant litigation and trial experience and have served in numerous leadership committees in some of the largest products liability and class action cases in the country, including multi-district litigation and state court consolidation court appointments. *Id.* Johnson Becker regularly counsels FLSA collective actions as well, having filed a significant number of unpaid overtime collective action lawsuits across the country over the past decade and recovering millions of dollars on behalf of their clients. *Id.* Johnson Becker regularly litigates and

settles call center cases where employees claim unpaid wages for boot-up and call ready work. *Id.* ¶ 5. Johnson Becker has litigated such cases through conditional certification, discovery, class certification, and summary judgment. *Id.*

*3. The complexity and duration of the case.*

This case resolved early. After service of the Complaint, Defendant agreed to stay the case, conduct informal discovery, and proceed to mediation regarding the collective claims. This factor does not weigh against the requested fees where Plaintiff's Counsel is well-versed in the FLSA and off-the-clock work call center cases and utilized this experience to bring this matter to an efficient conclusion. *See Rosales*, 2024 WL 1417955, at *9. "[C]ases brought under the FLSA are fact-intensive and 'requir[e] significant commitments of time and personnel to litigate.'" *McCune*, 2024 WL 3811411, at *6. "While this matter was not overly drawn out, it did involve consideration and analysis of complex issues, as collective actions inherently require considerable coordination and management." *Id.*; *Chrismon v. Pizza*, No. 5:19-cv-155-BO, 2020 WL 3790866, at * 5 (E.D.N.C. July 7, 2020) (noting that wage and hour class and collective actions are inherently complex and time-consuming).

*4. The risk of nonpayment.*

Named Plaintiff engaged Collective Counsel to represent her on a contingent-fee basis. Rusch Decl. ¶ 21. If her claim proved successful on a collective or class-wide basis, then Collective Counsel could seek reimbursement for attorneys' fees pursuant to either the lodestar or the common fund doctrine from any collective or class-wide monetary recovery. *Id.* ¶ 22. Collective Counsel agreed to advance all litigation expenses. *Id.* ¶ 23. If the claim produced no money for the client, then Collective Counsel would have borne the cost of litigation. *Id.* ¶ 24. The Parties also negotiated this settlement with the expectation that Collective Counsel's reasonable attorneys' fees

and costs would be included in the settlement fund. *See Weckesser v. Knight Enterprises S.E., LLC*, 402 F. Supp. 3d 302, 307 (D.S.C. 2019) (stating "case was taken on as a contingent fee, based solely on potential recovery of costs and fees if Plaintiffs prevailed or a settlement was reached" which weighed in favor of fee award). Therefore, the negotiated $100,000 in attorneys' fees representing 1/3 of the settlement fund conforms with Named Plaintiff's retainer with Collective Counsel, the Parties' settlement negotiations, and applicable law.

*5. Awards in similar cases.*

When applying the percentage-of-the-fund method, courts have allowed attorney compensation ranging from 19 to 45% of the settlement fund. *McAdams*, 26 F.4th at 162 (citing *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 533 (E.D. Pa. 1990)). "[M]ost suits for damages in this country are handled on the plaintiff's side on a contingent-fee basis" and that the "typical contingent fee is between 33 and 40 percent." *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998). "When plaintiffs' counsel accepts a case on a contingency basis, it is customary to charge one-third (33.3%) or more of any amount recovered for the client." *Savani*, 121 F. Supp. 3d at 572 (noting a study from 1996 that "most fee awards ranged from 20–40% of the gross settlement amount").

District courts in the Fourth Circuit frequently approve attorney fee requests of around 33.33% of a settlement fund. *See Winingear v. City of Norfolk, Va.*, No. 2:12cv560, 2014 WL 3500996, at *6–7 (E.D. Va. July 14, 2014) (awarding 35% of settlement fund as fees with a 1.6 multiplier in FLSA action); *Devine v. City of Hampton, Va.*, No. 4:14cv81, 2015 WL 10793424, at *3 (E.D. Va. Dec. 1, 2015) (approving 33.98% of settlement fund as attorneys' fees in FLSA action); *Kirkpatrick v. Cardinal Innovations Healthcare Sol.*, 352 F. Supp. 3d 499, 507 (M.D.N.C. 2018) (approving requested attorneys' fees of 33.39% of settlement fund); *Hatzey v. Divurgent,*

*LLC*, No.: 2:18-cv-191, 2018 WL 5624300, at *4–5 (E.D. Va. Oct. 9, 2018) (awarding 1/3 of settlement fund as attorneys' fees with a 6.4 multiplier to actual lodestar in FLSA action); *McCune v. Faneuil Inc.*, No. 4:23-cv-41, 2024 WL 3811411, at *6 (E.D. Va. Aug. 13, 2024) (awarding 33.33% of settlement fund with 1.95 multiplier in FLSA action). The requested 33.33% of the settlement fund is therefore appropriate.

*6. Objections and public policy.*

Unlike Fed. R. Civ. P. 23, the FLSA does not require an objection period. Each putative Settlement Collective member will be sent the Collective Notice informing them of the settlement, the basis of the settlement, how settlement awards are determined, and how the costs of settlement administration, a service award, and attorneys' fees and litigation costs are to be paid from the settlement fund. If a putative Collective Member does not like the terms of the settlement, then they can choose to do nothing, not opt in to the settlement, and preserve their claim.

### *C. A Lodestar Cross-check Supports an Award of 1/3 of the Settlement Fund as Attorneys' Fees.*

The reasonableness of the agreed upon amount for attorneys' fees is further supported by looking at the lodestar. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (discussing lodestar method's application to attorneys' fees awarded from a fee-shifting statute). The lodestar presumptively reflects reasonable attorneys' fees. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (stating that the lodestar figure has become the "guiding light" of fee-shifting jurisprudence). The lodestar method calculates reasonable fees by multiplying the number of reasonable hours expended times a reasonable rate. *See McAdams*, 26 F.4th at 162. As shown below, the lodestar cross-check with a modest multiplier in this case fully supports the agreed upon $100,000.00 in attorneys' fees.

A lodestar cross-check is not required. "Assessing the fairness of attorney's fees under an FLSA settlement negotiated at arm's length is not identical to determining their reasonableness using the familiar lodestar method." *Devine*, 2015 WL 10793424, at *3 (declining to perform cross-check where fees were comparable to similar FLSA cases). Courts "have concluded that the percentage method is more efficient and less burdensome than the traditional lodestar method, and offers a more reasonable measure of compensation for common fund cases." *Strang*, 890 F. Supp. At 503 (declining to perform lodestar cross-check); *see Rosales*, 2024 WL 1417955, at *10 n. 8 (determining that a lodestar cross-check was not required).

If a lodestar comparison is performed, then it need not be as exhaustive in the context of a cross-check as it would be if it were the only method of assessing the requested attorneys' fees. *McCune*, 2024 WL 3811411, at *3. When conducting a lodestar cross-check, an attorneys' hours do not need "exhaustively scrutinized." *Id.* at *7; *see Hatzey*, 2018 WL 5624300 at *5 (performing a light cross-check). Additionally, because the lodestar analysis serves as a double-check on the reasonableness of the fee award, the Court need not discuss the twelve *Johnson* factors separately. *McCune* at *7; *see Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir. 1978) (referencing Fifth Circuit decision in *Johnson* outlining factors to consider in full lodestar analysis).

In determining the reasonableness of hours expended for lodestar purposes, courts consider, *inter alia*, the novelty and difficulty of the issues and the level of opposition during the litigation. *See Shipes v. Trinity Indus.*, 987 F.2d 311, 321 (5th Cir. 1993). Here, Collective Counsel showed demonstrable skill and quality by engaging in a concerted effort to obtain Named Plaintiff's and the Collective's maximum recovery. Collective Counsel expended numerous hours, *inter alia*, developing Named Plaintiff's case, preparing the Complaint, reviewing collective-wide data for settlement purposes, attending an in-person mediation, negotiating this settlement, and

finalizing the settlement and overseeing its anticipated administration. Over the last nine months, Collective Counsel have reasonably spent about 162.1 hours working on this lawsuit. *Rusch Decl.* ¶ 16. The total amount of hours expended to date in successfully and diligently prosecuting this action therefore is fair and reasonable for the services provided. Collective Counsel will continue to spend addition hours overseeing and participating in the implementation, administration, and effectuation of the settlement through completion. Here, Collective Counsel's customary billing rates ranged from $125.00 to $850.00 an hour. *Id.* ¶¶ 10–13. At their standard billing rates, Collective Counsel's lodestar is approximately $109,595.00. *Id.* ¶ 16.

Collective Counsel's lodestar is a fair and reasonable amount expended in light of the work required. The settlement of $100,000.00 for attorneys' fees is therefore reasonable compared to Collective Counsel's lodestar. Thus, the Court should approve the requested attorneys' fees.

***D. Collective Counsel Should be Reimbursed for Litigation Expenses.***

It is well-established that plaintiffs who are entitled to recover attorneys' fees are also entitled to recover reasonable litigation-related expenses as part of their overall award. *In re Zetia (Ezetimibe) Antitrust Litig.*, 699 F. Supp. 3d 448, 463 (E.D. Va. 2023). These expenses include the types of normal expenses that would be charged to a fee-paying client in the course of litigation, such as necessary travel, depositions and transcripts, postage, court costs, and photocopying. *Id.* Collective Counsel advanced litigation costs and expenses on behalf of Named Plaintiff and the Collective in the amount of $7,660.04. Rusch Decl. ¶ 26. This includes filing costs, service costs, *pro hac vice* admission costs, and the costs of attending an in-person mediation. *Id.* All of these expenses were necessary for the litigation and resolution of this action for the benefit of Named Plaintiff and the Collective.

## CONCLUSION

For the foregoing reasons, Named Plaintiff respectfully requests, and Defendant does not oppose, that the Court issue an Order approving the Settlement Agreement and dismissing this case with prejudice.

Dated: September 12, 2025

Respectfully submitted,

*/s/ Christopher P. Yakubisin*
Jacob R. Rusch (MN Bar No. 0391892)*
Zackary S. Kaylor (MN Bar No. 0400854)*
**JOHNSON BECKER, PLLC**
444 Cedar Street, Suite 1800
St. Paul, MN 55101
T: (612) 436-1800
F: (612) 436-1801
jrusch@johnsonbecker.com
zkaylor@johnsonbecker.com

*Collective Counsel*

Michael G. Phelan (VSB No. 29725)
Christopher P. Yakubisin (VSB No. 91186)
**PHELAN PETTY, PLC**
3315 W. Broad Street
Richmond, Virginia 23230
T: 804-980-7100
F: 804-767-4601
mphelan@phelanpetty.com
cyakubisin@phelanpetty.com

*Local Counsel*

**Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of September, 2025, I filed a true and correct copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

/s/

Christopher P. Yakubisin, Esq.